**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

|  |  |
|---|---|
| ANNA MILLER, and SAMANTHA PHILLIPS, individually and on behalf of a class of similarly situated persons, | Civil Action |
| Plaintiffs, | File No. _____ |
| v. | CLASS ACTION |
| WELLS FARGO BANK, N.A., | JURY TRIAL |
| Defendant. | |

**COMPLAINT**

Brett M. Amron
BAST AMRON LLP
One Southeast Third Ave Ste 1400
Miami, FL 33131

Steven Rosenwasser
Naveen Ramachandrappa
BONDURANT, MIXSON & ELMORE, LLP
1201 W Peachtree St NW Ste 3900
Atlanta, GA 30309
*Pro Hac Pending*

Adam Hoipkemier
Matthew Wetherington
THE WERNER LAW FIRM
2860 Piedmont Rd NE
Atlanta, GA 30305
*Pro Hac Pending*

**Attorneys for Plaintiffs**

# TABLE OF CONTENTS

Summary ........................................................................................................................ 1

Parties .......................................................................................................................... 2

Jurisdiction .................................................................................................................. 2

Fact Allegations .......................................................................................................... 3

    A.    Borrowers Pay For And The FHA Supplies Mortgage Insurance To
Lenders. ................................................................................................... 3

    B.    The FHA Prohibits Lenders From Collecting Post-Payment Interest On
FHA-Insured Loans, Unless They First Provide The FHA-Approved
Form. ....................................................................................................... 3

    C.    Lenders Have Collected Billions Of Dollars In Post-Payment Interest On
FHA-Insured Loans. ............................................................................... 7

    D.    Wells Fargo Did Not Provide The FHA-Approved Form To Anna Miller
Before Collecting Post-Payment Interest. ............................................ 10

    E.    It Is Substantially Likely That Wells Fargo Will Collect Post-Payment
Interest From Samantha Phillips In The Future. ................................... 11

Class Action Allegations ........................................................................................... 13

Count One – Breach Of Contract .............................................................................. 16

Count Two – Declaratory And Injunctive Relief ...................................................... 17

Relief Requested ....................................................................................................... 19

## Summary

1.      Defendant Wells Fargo Bank, N.A. has a systematic practice of collecting "post-payment" interest on loans insured by the Federal Housing Administration without first complying with the uniform provisions of the promissory notes and the FHA regulations governing these loans.  As a result, Wells Fargo has collected hundreds of millions of dollars in post-payment interest in an unlawful manner, and through this breach of contract class action, Plaintiffs seek to recover damages for those class members already injured and declaratory and injunctive relief to prevent future violations by Wells Fargo.

2.      Post-payment interest refers to interest that a lender collects **after** the borrower has paid the **full** unpaid principal of the loan.  For example, if a borrower pays off the loan in full on August 5, and the lender continues collecting interest for the remainder of August, the interest collected after August 5 is post-payment interest.

3.      A promissory note governs the contractual relationship between borrowers and lenders, and lenders issuing FHA-insured loans must include certain uniform provisions in the notes for these loans.  Among other things, the uniform provisions provide that the lender may collect post-payment interest for the remainder of the month in which full payment is made, but only "**to the extent . . . permitted by [FHA] regulations**."  Multistate – FHA Fixed Rate Note, USFHA.NTE, attached as Exhibit 1, at 2.

4.      The FHA regulations prohibit lenders from collecting post-payment interest unless two strict conditions are met: (a) the borrower makes payment of the full unpaid principal on a day "**other than** [the first of the month]" and (b) the lender must provide the borrower with "**a form approved by the [FHA]**."  24 C.F.R. § 203.558 (c) (2014) (emphasis added).

5.      The FHA requires use of its approved form because the form explains to borrowers, at the appropriate time, that the lender is seeking to collect post-payment interest, the terms under which the lender can collect post-payment interest, and how they can avoid such charges.  *See* HUD Housing Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5 Appendix 8 (C), attached as Exhibit 2.

6.      Although both the uniform provisions of the note and the FHA regulations prohibit lenders from collecting post-payment interest unless they provide borrowers with the FHA-approved form, Wells Fargo does not use the FHA-approved form.  Instead, Wells Fargo uses its own unauthorized form, which is not approved by the FHA and does not fairly disclose

the terms under which Wells Fargo can collect post-payment interest or properly explain how borrowers can avoid such charges.

7.      Because Wells Fargo does not use the FHA-approved form as required by both the uniform provisions of the note and the FHA regulations, Wells Fargo has no right to collect post-payment interest from borrowers.  Yet, Wells Fargo has unlawfully collected hundreds of millions of dollars in post-payment interest from Plaintiffs and the class, and it will continue to do so in the future.  Through this class action, Plaintiffs seek to recover damages for those class members already injured and declaratory and injunctive relief to prevent future violations.

## Parties

8.      Plaintiff Anna M. Miller is a citizen of Florida, residing in Riverview, Florida.  In 2013, Miller paid off an FHA-insured loan held by Defendant Wells Fargo Bank, N.A.

9.      Plaintiff Samantha E. Phillips is a citizen of Georgia, residing in Atlanta, Georgia. Phillips has an outstanding FHA-insured loan held by Defendant Wells Fargo Bank, N.A.

10.     Defendant Wells Fargo Bank, N.A. is a national banking association.  Wells Fargo held, or continues to hold, FHA-insured loans for Plaintiffs and other class members. Some of these loans have been paid off in full (as is the case for Miller), while others remain outstanding (as is the case for Phillips).

11.     Wells Fargo's Articles of Association state that its main office shall be in Sioux Falls, South Dakota.  Thus, Wells Fargo is a citizen of South Dakota.  *See* 28 U.S.C. § 1348.

## Jurisdiction

12.     This Court has subject matter jurisdiction over this class action.  Miller and Phillips are each citizens of a State different from Wells Fargo, and so are many other class members.  *See* 28 U.S.C. § 1332 (d)(2).  And the claims of the class in the aggregate exceed the minimally required amount in controversy.  *See* 28 U.S.C. § 1332 (d)(6).  In fact, the amount in controversy involves hundreds of millions of dollars.

13.     This Court has personal jurisdiction over Wells Fargo.  *See* Fla. Stat. § 48.193. Among other things, Wells Fargo is registered to and does conduct business in Florida, holds mortgages on real property in Florida, has breached contracts with persons located in Florida, has caused injuries in Florida, and generally engages in substantial activity in Florida.

14.     Wells Fargo can be served through its registered agent, which is Corporation Service Company, located at 1201 Hays Street, Tallahassee, Florida 32301-2525.

15.     This Court is also a proper venue for this action.  Wells Fargo is subject to personal jurisdiction in the Southern District of Florida, which "[f]or purposes of venue," means that Wells Fargo resides in this judicial district.  28 U.S.C. § 1391 (b)(1), (c).

<u>Fact Allegations</u>

**A.     Borrowers Pay For And The FHA Supplies Mortgage Insurance To Lenders.**

16.     Department of Housing and Urban Development is a department within the executive branch of the United States government.  HUD was established in 1965 by the Department of Housing and Urban Development Act.  *See* 42 U.S.C. § 3532.  Federal Housing Administration was established in 1934 by the National Housing Act of 1934.  *See* 12 U.S.C. § 1701.  When HUD was created, Congress re-organized the FHA as an agency within HUD.

17.     Among other things, the FHA provides mortgage insurance to FHA-approved lenders for loans on single-family homes.  *See* U.S. Dep't of Housing and Urban Devt., http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/fhahistory.  The FHA is the largest insurer of mortgages in the world, currently insuring approximately 4.8 million single family homes.  *Id.*

18.     Mortgage insurance protects lenders against losses that are caused by borrower defaults.  The lenders bear less risk on FHA-insured loans because the FHA will pay lenders in the event of a borrower default.  *Id.*  In exchange for FHA mortgage insurance, borrowers pay an upfront mortgage insurance premium and also make monthly premium payments.

19.     To be eligible to receive FHA mortgage insurance, lenders must be pre-approved by the FHA.  Lenders must also comply with FHA regulations, including but not limited to the regulations contained in Title 24, Subtitle B, Chapter II, Subpart B, Part 203 of the Code of Federal Regulations.  Among other things, FHA regulations require that, for any FHA-insured loan, the lender must include certain uniform provisions in every promissory note.  As a result, each of the approximately 4.8 million FHA-insured loans is documented by a promissory note containing certain uniform provisions.

**B.     The FHA Prohibits Lenders From Collecting Post-Payment Interest On FHA-Insured Loans, Unless They First Provide The FHA-Approved Form.**

20.     One uniform provision lenders must include in the promissory note for every FHA-insured loan addresses the borrower's promise to pay interest for unpaid principal:

2.     BORROWER'S PROMISE TO PAY; INTEREST

> In return for a loan received from Lender, Borrower promises to pay the principal sum of _____ Dollars (U.S. $ _____), plus interest, to the order of Lender.  **Interest will be charged on unpaid principal**, from the date of disbursement of the loan proceeds by Lender, at the rate of _____ percent ( _____ %) per year **until the full amount of the principal has been paid**.

Multistate – FHA Fixed Rate Note, USFHA.NTE at 1 (emphasis altered).

21.     Under this provision, the borrower agrees to pay interest only on the **unpaid principal**, and once the borrower pays the full unpaid principal, interest no longer accrues.  This makes sense because, by definition, interest is calculated from the amount of the outstanding principal loaned by the lender to the borrower.

22.     In fact, when lenders issue loans backed by Fannie Mae, Freddie Mac, and the Department of Veterans Administration, interest charges stop on the day the borrower pays the full unpaid principal of the loan, and the lender cannot collect any post-payment interest.

23.     However, for nearly thirty years, the FHA maintained a policy different from the other government agencies.  For mortgages insured by the FHA on or after August 2, 1985 and through January 20, 2015, the FHA allows lenders, subject to strict limitations, to collect interest even after the borrower has paid the full amount of the unpaid principal.

24.     This type of interest is often referred to as "post-payment" interest.  Post-payment interest is interest that a lender collects even after the borrower has paid the full unpaid principal.  It is also considered a "penalty" because, at that point, the borrower owes the lender **nothing**; the full unpaid principal has been paid, and the lender has all the money it was owed.  The lender is penalizing the borrower for paying the loan before the maturity date.

25.     Although the FHA permits lenders to collect post-payment interest, the FHA has imposed strict limitations on the lender's ability to do so.  The FHA prohibits lenders from collecting post-payment interest unless the lender complies with FHA regulations.  And the FHA regulations require the lender to provide the borrower with the FHA-approved disclosure form.

26.     The limitations on post-payment interest are reflected in a uniform provision of the note, which again must be included in the note for every FHA-insured loan:

> 5.     BORROWER'S RIGHT TO PREPAY
> **Borrower has the right to pay the debt** evidenced by this Note, in whole or in part, **without charge or penalty, on the first day of any month**.  Lender shall accept prepayment **on other days** provided that **Borrower pays interest** on

the amount prepaid for the remainder of the month **to the extent required by Lender and permitted by regulations of the Secretary**.  If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

Multistate – FHA Fixed Rate Note, USFHA.NTE (emphasis altered) at 2.[1]

27.     Under this provision, the borrower has the right to prepay the full unpaid principal without charge or penalty on the **first** of the month.  The borrower also has the right to prepay the full unpaid principal on days **other than** the first; provided however that, in such cases, the lender can collect post-payment interest for the remainder of that month **if the lender complies with FHA regulations**.

28.     The relevant FHA regulation is titled "Handling Prepayments" and provides that:

(a) Notwithstanding the terms of the mortgage, the [lender] may accept a prepayment at any time and in any amount.  **Except as set out below, monthly interest on the debt must be calculated on the actual unpaid principal balance** of the loan.
. . .
(c) If the prepayment is offered on other than an installment due date [the first of the month], the [lender] may refuse to accept the prepayment until the next installment due date (the first day of the month), or may require payment of interest to that date, **but only if the [lender] so advises the [borrower], in a form approved by the Commissioner**, in response to the [borrower's] inquiry, request for payoff figures, or tender of prepayment.
. . .
(e) If the [lender] fails to meet the full disclosure requirements of paragraphs (b) and (c) of this section, the [lender] may be subject to forfeiture of that portion of interest collected for the period beyond the date that prepayment in full was received and to such other actions as are provided in part 25 of this title.

24 C.F.R. § 203.558 (2014) (emphasis added).

29.     Under this regulation, if payment of the full unpaid principal is made on a day other than the first of the month, and the lender provides the borrower the FHA-approved form, then, and only then, can the lender collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

30.     For mortgages insured on or after August 2, 1985 and through January 20, 2015,

---

[1] Miller's note and Phillips's note are fixed rate notes, and for FHA fixed rate notes, the uniform provision regarding the borrower's right to prepay is located at section 5.  For FHA adjustable rate notes, the same uniform provision regarding the borrower's right to prepay is located at section 6.  There is no difference in the relevant language.

the FHA-approved form is Appendix 8 (C) to the HUD Housing Handbook:

MORTGAGEE NOTICE TO MORTGAGOR
(In response to prepayment inquiry, request for payoff or tender of prepayment in full)

Mortgagor: _____   Date: _____
Address: _____   Loan #: _____
_____   FHA#: _____

   This is in reply to your _____(date)_____ inquiry/request for payoff figures or offer to tender an amount to prepay in full your FHA-insured mortgage which this company is servicing.

   This notice is to advise you of the procedure which will be followed to accomplish a full prepayment of your mortgage.

   The _____(mortgagee name)_____ will:

(a)   [ ]   accept the full prepayment amount whenever it is paid and collect interest only to the date of that payment; or

(b)   [ ]   only accept the prepayment on the first day of any month during the mortgage term; or accept the prepayment whenever tendered with interest paid to the first day of the month following the date prepayment is received[.]

———————————————————————————

   NOTE: It is to your advantage to arrange closings so that the prepayment reaches us on or before (as close to the end of the month as possible) the first work day of the month.

   If you have any questions regarding this notice, please contact _____(name and/or department) ____at___(telephone number)____.


_____
Mortgagee

Attachment (Pay off Statement)

HUD Housing Handbook, 4330.1 REV-5 Appendix 8 (C) at 1-2.

   31. As HUD explains, "[t]he **basic disclosure** language is necessary because it pertains to the [borrower's] rights under the mortgage." HUD Housing Handbook,

Administration of Insured Home Mortgages, 4330.1 REV-5, Chapter 5-1 (C), at 2, attached as Exhibit 3 (emphasis added).

32.     HUD also confirms that the lender "**must disclose** the procedures that must be followed with respect to the payoff and **must explain** how the amount of the prepayment has been determined.  **Otherwise, the [lender] must forfeit any interest collected after the date of prepayment**." *Id.* at 6. (emphasis added)

33.     And HUD expressly instructs lenders that "[**n]one of the HUD-required language should be deleted**." *Id.* at 2 (emphasis added).

34.     In sum, pursuant to the uniform provisions of the note and FHA regulations, lenders cannot collect post-payment interest on FHA-insured loans unless (a) the borrower pays the full unpaid principal on a day **other than** the first of the month and (b) the lender has provided the borrower **the FHA-approved form**.  If the lender satisfies both of those requirements, only then can the lender collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

**C.     Lenders Have Collected Billions Of Dollars In Post-Payment Interest On FHA-Insured Loans.**

35.     From August 2, 1985 through January 20, 2015, lenders including Wells Fargo have collected billions of dollars in post-payment interest.

36.     The National Association of Realtors estimates that "more than 40 percent of FHA borrowers close during the first 10 days of the month, exposing them to at least 20 days of interest payments."  Kenneth R. Harney, *Interest Costs Don't End With Payoff Of FHA Loan*, Chicago Tribune, Apr. 11, 2004, http://articles.chicagotribune.com/2004-04-11/business/0404110057_1_fha-loan-ginnie-mae-fha-borrowers, attached as Exhibit 4.   The NAR further "estimate[s] that during 2003, . . . FHA customers who terminated their loans paid an average of $528 in 'excess interest fees,' a cumulative 'prepayment penalty' to those borrowers of **$587 million**." *Id.* (emphasis added).

37.     "HUD doesn't get the interest, lenders do.  In effect, **lenders are getting interest for money that isn't outstanding**.  This may not sound like a big deal, but according to HUD, such post-payment interest charges cost borrowers **$449 million** in 2012."  Peter Millar, *The Very New Deal: How FHA Mortgages Are Changing For 2015*, The Simple Dollar, Jan. 9, 2015, http://www.thesimpledollar.com/the-very-new-deal-how-fha-mortgages-are-changing-in-2015/,

attached as Exhibit 5 (emphasis added).

38.     "This practice . . . has cost consumers staggering amounts, with estimates ranging into the **hundreds of millions of dollars a year** during periods when mortgage rates were high." Kenneth R. Harney, *FHA Will Stop Lenders From Charging Extra Interest When Homeowners Sell or Refinance*, Washington Post, Sep. 5, 2014, https://www.washingtonpost.com/realestate/fha-will-stop-lenders-from-charging-extra-interest-when-homeowners-sell-or-refinance/2014/09/04/478a2a04-32a6-11e4-8f02-03c644b2d7d0_story.html, attached as Exhibit 6 (emphasis added).

39.     "[T]**he clear loser** in the full-month interest policy **is 'the one who can least afford it, the consumer**." Harney, Chicago Tribune, Apr. 11, 2004 (emphasis added). "**Hundreds of thousands of home sellers have had their pockets picked** at closings during the past decade: They've been charged interest on their mortgages after their principal debts had been fully paid off." Harney, Washington Post, Sep. 5, 2014 (emphasis added).

40.     Meanwhile, "**the true beneficiaries** of the long-standing practice were [the lenders], who could earn interest on the 'float' – the money they collected from borrowers and had free use of until the end of the month, when they had to disburse final interest payments to bond investors." Kenneth R. Harney, *Controversial FHA Payoff Rule to End*, Los Angeles Times, Mar. 30, 2014, http://articles.latimes.com/2014/mar/30/business/la-fi-harney-20140330, attached as Exhibit 7 (emphasis added).

41.     All of the relevant government agencies now agree that collecting post-payment interest is an unfair prepayment penalty and is against public policy.

42.     On August 26, 2009, the Board of Governors of the Federal Reserve System proposed a rule "to amend Regulation Z, which implements the Truth in Lending Act (TILA)," which regulates prepayment penalties. 74 Fed. Reg. 43232, 43232 (Aug. 26, 2009). The Board stated that "[o]ne such example [of a prepayment penalty] is 'interest charges for any period after prepayment in full is made.' **When the loan is prepaid in full, there is no balance to which the creditor may apply the interest rate**." *Id.* at 43257 (emphasis added).

43.     On January 30, 2013, the Consumer Financial Protection Bureau issued a final version of its rule titled "Ability-to-Repay and Qualified Mortgage Standards under the Truth in Lending Act (Regulation Z)." *See* 78 Fed. Reg. 6408, 6408 (Jan. 30, 2013). Regulation Z broadly defines "prepayment penalty" as the "charge imposed for paying all or part of the

transaction's principal balance before the date on which the principal is due." *Id*. at 6444.

44.    This definition includes "charges resulting from FHA's monthly interest accrual amortization method."  79 Fed. Reg. 50835, 50835 (Aug. 26, 2014).  As CFPB explains:

> [I]t is appropriate to designate higher interest charges for consumers based on accrual methods that treat a loan balance as outstanding for a period of time after prepayment in full as prepayment penalties . . . .  In such instances, **the consumer submits a payment before it is due, but the creditor nonetheless charges interest on the portion of the principal that the creditor has already received**. The Bureau believes that charging a consumer interest after the consumer has repaid the principal is the functional equivalent of a prepayment penalty.

78 Fed. Reg. 6408, 6445 (Jan. 30, 2013) (emphasis added).

45.    Based on Regulation Z's definition, charges for post-payment interest are now subject to the Truth in Lending Act.  *See* 79 Fed. Reg. 50835, 50835 (Aug. 26, 2014); 75 Fed. Reg. 58539, 58586 (Sep. 24, 2010) ("[T]he Board believes that the charging of interest for the remainder of the month in which prepayment in full is made should be treated as a prepayment penalty for TILA purposes, even when done pursuant to the monthly interest accrual amortization method.").

46.    In response to those changes by FRB and CFPB, on March 13, 2014, "HUD published a proposed rule in the Federal Register, at 79 FR 14200, to eliminate post-payment interest charges to borrowers resulting from FHA's monthly interest accrual amortization method for calculating interest."  79 Fed. Reg. 50835, 50835.  And, on August 26, 2014, HUD issued a final version of its rule titled "Federal Housing Administration (FHA): Handling Prepayments: Eliminating Post-Payment Interest Charges."  *Id.*

47.    Under the new regulation, "[w]ith respect to FHA-insured mortgages closed on or after January 21, 2015, notwithstanding the terms of the mortgage, the [lender] shall accept a prepayment at any time and in any amount."  24 C.F.R. § 203.558 (a).  "Monthly interest on the debt must be calculated on the actual unpaid principal balance of the loan as of the date the prepayment is received, and not as of the next installment due date."  *Id.*

48.    Although CFPB, FRB, and HUD have now all prohibited post-payment interest charges for FHA-insured mortgages closed on or after January 21, 2015, they **did not** make this change retroactive.  "[T]he estimated **7.8 million existing FHA mortgage borrowers** who are not covered by the forthcoming policy change **will continue to be vulnerable** to paying more

than they should." Harney, Los Angeles Times, Mar. 30, 2014 (emphasis added).

**D.    Wells Fargo Did Not Provide The FHA-Approved Form To Anna Miller Before Collecting Post-Payment Interest.**

49.    On July 10, 2009, Wells Fargo loaned Anna Miller money for the purchase of a home in Riverview, Florida.  Miller's loan was insured by the FHA, and so Wells Fargo is required to comply with FHA regulations with respect to her loan.

50.    Pursuant to FHA regulations, Miller's promissory note contains certain uniform provisions found in the note for every FHA-insured loan.  These uniform provisions include, among others, section 2 titled "Borrower's Promise to Pay; Interest" and section 5 titled "Borrower's Right to Prepay."  *See* Multistate – FHA Fixed Rate Note, USFHA.NTE, at 1-2.

51.    In 2013, Miller re-financed her loan with another lender.  So that she could pay off her loan with Wells Fargo, Miller requested that Wells Fargo provide her with a payoff statement.

52.    Wells Fargo provided a payoff statement dated July 23, 2013.  The statement is a form document, in which Wells Fargo uses form language throughout the document and fills in only the particular numbers and address information that correspond to a specific borrower.  *See* Jul. 23, 2013 Payoff Statement, From Wells Fargo, To Anna Miller, attached as Exhibit 8, at 1.

53.    The form includes the statements "TOTAL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER NOTE / SECURITY INSTRUMENT"; "Unpaid Principal Balance $ "; "Interest as of "; and "TOTAL AMOUNT DUE through  $ ."  *Id.* at 2.

54.    The statement contains the following specific numbers for Miller's loan: "Unpaid Principal Balance $147,332.08"; "**Interest as of 09-01-13 [$] 1,227.68**"; "TOTAL CONTRACTUAL AND OTHER FEES AND CHARGES DUE $10.00"; and "TOTAL AMOUNT DUE through 09-01-13 $ 148,819.89."  *Id.* (emphasis added).

55.    Miller's interest payments were $613.84 per month.  Thus, by representing that Miller owed $1,227.68 in interest, Wells Fargo charged and sought to collect interest for **two months** – interest for the entire month of July 2013 and interest for the entire month of August 2013, even though the payoff statement was issued on July 23, 2013.  *Id.*

56.    On August 20, 2013, Miller paid Wells Fargo $148,819.89, which includes the $1,227.68 in interest Wells Fargo represented it was owed.  And because Wells Fargo required Miller to pay interest for the entire month of August 2013 – even though Miller paid the full

unpaid principal on August 20, 2013 – Wells Fargo collected post-payment interest.

57.     However, Wells Fargo did not first provide Miller with the FHA-approved form. For one, the form used by Wells Fargo is not an FHA-approved form, and FHA approval is an **express** requirement of FHA regulations.

58.     Moreover, Wells Fargo's unauthorized form is both misleading and confusing. The relevant language consists of two sentences.  The first sentence tells Miller that "[w]e **will collect interest through the end of the month** in which we receive the payoff funds."  *Id.* at 1 (emphasis added).  Because this language is unconditional, Wells Fargo wrongly tells Miller that, even if payment is made on the first of the month, Wells Fargo "**will**" collect interest through the end month of that month – which both the uniform provisions of the note and FHA regulations prohibit Wells Fargo from doing.  *See* Multistate – FHA Fixed Rate Note, USFHA.NTE at 2 ("Borrower has the right to pay the debt . . . without charge or penalty, on the first day of any month."); 24 C.F.R. § 203.558 (c) (2014).

59.     The second sentence further reinforces the misleading and confusing nature of the first sentence.  It tells Miller that, "[t]o avoid paying an **extra month** of interest, it is to your advantage to arrange closing so the payoff funds reach us on or before the first business day of the month."  Jul. 23, 2013 Payoff Statement, From Wells Fargo, To Anna Miller, at 1 (emphasis added).  Because this language follows the first sentence – "[w]e will collect interest through the end of the month" – Wells Fargo wrongly tells Miller that, no matter what she has to pay interest through the end of the month in which payment is received, and only addresses how to avoid payment of interest for an "**extra month**."  In other words, Wells Fargo only addresses how to avoid a second month of post-payment interest.

**E.     It Is Substantially Likely That Wells Fargo Will Collect Post-Payment Interest From Samantha Phillips In The Future.**

60.     On October 19, 2012, Wells Fargo loaned Samantha Phillips money for the refinance of her home in Atlanta, Georgia.  Phillips's loan was insured by the FHA, and so Wells Fargo is required to comply with FHA regulations with respect to her loan.

61.     Pursuant to FHA regulations, Phillips's promissory note contains certain uniform provisions appearing in the note for every FHA-insured loan.  These uniform provisions include section 2 titled "Borrower's Promise to Pay; Interest" and section 5 titled "Borrower's Right to Prepay."  *See* Multistate – FHA Fixed Rate Note, USFHA.NTE, at 1-2.

62.     As of the date of this filing, Wells Fargo continues to hold Phillips's loan, and Phillips continues to make regular monthly payments.  However, Phillips intends to pay off her loan at some point before the maturity date, and in light of Wells Fargo's consistent business practices and use of unauthorized forms, it is substantially likely and reasonable to expect that Wells Fargo will collect post-payment interest when Phillips prepays her loan.

63.     In fact, on October 3, 2015, Wells Fargo sent Phillips a "payoff statement."  The statement is a form document, in which Wells Fargo uses form language throughout the document and fills in only the particular numbers and address information that correspond to a specific borrower.  *See* Oct. 03, 2015 Payoff Statement, From Wells Fargo, To Samantha Phillips, attached as Exhibit 9, at 1.

64.     The form includes the statements "TOTAL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER NOTE / SECURITY INSTRUMENT"; "Unpaid Principal Balance $ "; "Interest as of "; and "TOTAL AMOUNT DUE through  $ ."  *Id.* at 2.

65.     The statement Phillips received contains the following specific numbers: "Unpaid Principal Balance $95,457.91"; "Interest as of 11-01-15 [$] 636.38"; "TOTAL CONTRACTUAL AND OTHER FEES AND CHARGES DUE $12.00"; and "TOTAL AMOUNT DUE through 11-01-15 $ 96,726.11."  *Id.*

66.     Phillips's interest payments are $318.19 per month.  Thus, by representing that Phillips owed $636.38 in interest, Wells Fargo was charging Phillips interest for **two months** interest for the entire month of September 2015 and interest for the entire month of October 2015, even though the payoff statement was issued on October 3, 2015.  *Id.*

67.     Because Wells Fargo has represented that Phillips must pay interest for the entire month of October 2015 – even though the payoff statement was issued on October 3, 2015 – Wells Fargo is demanding that Phillips pay post-payment interest.

68.     However, Wells Fargo did not provide Phillips the FHA-approved form.  For one, the form used by Wells Fargo is not an FHA-approved form, and FHA approval is an **express** requirement of FHA regulations.

69.     Moreover, Well Fargo's unauthorized form is both misleading and confusing. The relevant language consists of two sentences.  The first sentence tells Phillips that "[w]e **will collect interest through the end of the month** in which we receive the payoff funds."  *Id.* at 1 (emphasis added).  Because this language is unconditional, Wells Fargo wrongly tells Phillips

that, even if payment is made on the first of the month, Wells Fargo "**will**" collect interest through the end month of that month – which both the uniform provisions of the note and FHA regulations prohibit Wells Fargo from doing. *See* Multistate – FHA Fixed Rate Note, USFHA.NTE at 2 ("Borrower has the right to pay the debt . . . without charge or penalty, on the first day of any month."); 24 C.F.R. § 203.558 (c) (2014).

70.    The second sentence further reinforces the misleading and confusing nature of the first sentence.  It tells Phillips that, "[t]o avoid paying an **extra month** of interest, it is to your advantage to arrange closing so the payoff funds reach us on or before the first business day of the month."  Oct. 3, 2015 Payoff Statement, From Wells Fargo, To Samantha Phillips, at 1 (emphasis added).  Because this language follows the first sentence – "[w]e will collect interest through the end of the month" – Wells Fargo wrongly tells Phillips that, no matter what she has to pay interest through the end of the month in which payment is received, and only addresses how to avoid payment of interest for an "**extra month**."  In other words, Wells Fargo only addresses how to avoid a second month of post-payment interest.

71.    Although Phillips has not yet paid off her loan, she intends to do so before the maturity date and it is substantially likely and reasonable to expect that Wells Fargo will collect post-payment interest in the future without first providing the FHA-approved form, given that it has already demanded such payments by use of an unapproved form and it has given every indication of making such demand again in the future.

## **Class Action Allegations**

72.    Plaintiffs assert claims on behalf of themselves and a class similarly-situated persons pursuant to Rule 23 (b)(2) and (b)(3).  *See* Fed R. Civ. P. 23 (b).

73.    Plaintiffs propose the following classes, while reserving the right to modify these definitions.  *See* Fed. R. Civ. P. 23 (c).

a.    Past Borrowers of Wells Fargo Class – any person who had a loan (i) insured by the FHA at any time during the period beginning on August 2, 1985 and ending on January 20, 2015, (ii) that was held by Wells Fargo as of the day payment of the full unpaid principal was made, and (iii) for which Wells Fargo collected interest for any period after payment of the full unpaid principal was made.

b.    Current Borrowers of Wells Fargo Class – any person who has a loan (i)

insured by the FHA at any time during the period beginning on August 2, 1985 and ending on January 20, 2015, (ii) that is held by Wells Fargo as of the date of class certification, and (iii) for which there is an unpaid principal balance as of the date of class certification.

74.     Together, the "class" consists of Past Borrowers of Wells Fargo Class and Current Borrowers of Wells Fargo Class.

75.     Plaintiffs propose certification of all issues, while reserving the right to alternatively seek certification as to any specific claim or issue.  *See* Fed. R. Civ. P. 23 (c).

76.     Miller would serve as the class representative for the Past Borrowers of Wells Fargo Class.  Phillips would serve as the class representative for the Current Borrowers of Wells Fargo Class.

77.     Plaintiffs satisfy the requirements of Rule 23 (a).

a.      <u>Numerosity</u> – The classes are so numerous that joinder is impracticable. The FHA is the largest insurer of mortgages in the world, currently insuring around 4.8 million single family homes.  And, in just one month in 2015, Wells Fargo originated over 2,600 FHA-insured loans.  Plaintiffs estimate that the class consists of tens of thousands of persons.

b.      <u>Commonality</u> – There are numerous common questions of law and fact, including but not limited to the following:

i.      The promissory notes for FHA-insured loans contain uniform provisions that require lenders to comply with FHA regulations before collecting post-payment interest.  The essential issue in this case is whether, before collecting post-payment interest, Wells Fargo complied with the FHA regulation requiring that it provide the borrower "a **form** approved by the Commissioner, in response to the [borrower's] inquiry, request for payoff figures, or tender of prepayment."   24 C.F.R. § 203.558 (c) (2014) (emphasis added). Because Wells Fargo uses **form** payoff statements, the answer to this essential question will be common to all members of the class. The forms used by Wells Fargo either are or are not the FHA-approved form and that answer will be true for the entire class.

        ii.      Other common questions are whether Wells Fargo is liable in breach of contract for not providing borrowers with the FHA-approved form before collecting post-payment interest on FHA-insured loans held by Wells Fargo; and whether borrowers with outstanding FHA-insured loans held by Wells Fargo are entitled to declaratory and injunctive relief.

    c.    <u>Typicality</u> – Plaintiffs' claims are typical of the classes' and subclasses' claims.  Plaintiffs' promissory notes are not just typical of the rest of the class, but they are identical with respect to relevant provisions at issue in this case.  Further, because Wells Fargo uses form payoff statements, Plaintiffs have been or will be subject to conduct that is typical of the rest of the class.  Wells Fargo has sought to collect post-payment interest from Plaintiffs in the same manner that it has sought to collect post-payment interest from the rest of the class.

    d.    <u>Adequacy</u> – Plaintiffs would adequately protect the class's interests.  Each Plaintiff has a genuine interest in protecting the rights of the class and Plaintiffs' counsel is experienced in handling complex class actions.  Indeed, Plaintiffs' counsel has been designated and approved as class counsel in numerous state and federal courts.  Further, because Plaintiffs challenge form payoff statements used by Wells Fargo, the interests of Plaintiffs and the class are aligned.

78.    Plaintiffs satisfy the requirements of Rule 23 (b)(2).  Wells Fargo has engaged in standard, uniform conduct toward the class with respect to collecting post-payment interest.  In particular, Wells Fargo uses form payoff statements that do not satisfy the note or FHA regulations.  Thus, Wells Fargo's conduct applies to the class generally, so that corresponding declaratory and injunctive relief is appropriate for the Current Borrowers of Wells Fargo Class.

79.    Plaintiffs separately satisfy the requirements of Rule 23 (b)(3).

    a.    <u>Predominance</u> – The answers to the common questions in this case will decide liability for the entire class.  If Plaintiffs establish that Wells Fargo breached or would breach the contracts by not complying with FHA regulations, it will establish liability for all class members, without the

need for any additional proof as to liability.   Thus, common issues predominate over individual issues.

b.   <u>Superiority</u> – A class action is superior to other available remedies.   The common questions would predominate over any individual questions, and thus no other form of litigation could be superior to a class action. Further, because of the low dollar amounts at stake for each class member, a class action is the only way for Plaintiffs and other class members to obtain redress.   Moreover, the most efficient way to resolve the class's claims is for a court to decide all claims in a single class.   Requiring hundreds of thousands of class members to individually litigate their claims over and over again in various courts would be vastly inefficient.   It also raises the possibility of inconsistent judgments or conflicting declaratory and injunctive relief.

<strong><u>Count One – Breach Of Contract</u></strong>

80.   Miller asserts a breach of contract claim against Wells Fargo, on behalf of herself and the Past Borrowers of Wells Fargo Class.   Miller seeks damages for Wells Fargo's improper collection of post-payment interest.

81.   Miller and each member of the Past Borrowers of Wells Fargo Class had a contract with Wells Fargo.   The terms of the contract are set forth in the promissory note.   The note is a form contract containing certain provisions that are identical to provisions found in the notes for every FHA-insured loan.

82.   In section 2 of the note, "BORROWER'S PROMISE TO PAY; INTEREST," Wells Fargo agreed that "[i]nterest will be charged on **unpaid** principal" and only "until the full amount of the principal has been paid."   Multistate – FHA Fixed Rate Note, USFHA.NTE, at 1 (emphasis altered).

83.   In section 5 of the note, "BORROWER'S RIGHT TO PREPAY," Wells Fargo agreed that it would charge "interest on the amount prepaid for the remainder of the month" only "to the extent . . . **permitted by regulations of the Secretary**."   *Id.* at 2 (emphasis altered).

84.   The relevant FHA regulation, titled "Handling Prepayments," provides that, "[e]**xcept as set out** [**in this regulation**], monthly interest on debt must be calculated on the actual unpaid principal balance of the loan."   24 C.F.R. § 203.558 (a) (2014) (emphasis added).

"If the prepayment is offered on other than an installment due date [the first of the month], the [lender] . . . may require payment of interest to that date, but **only if** [the lender] so advises the [borrower], **in a form approved by the Commissioner**, in response to the [borrower's] inquiry, request for payoff figures, or tender of prepayment."  24 C.F.R. § 203.558 (c) (2014) (emphasis added).

85.     In addition to the express terms of the promissory note, the law implies a duty of good faith and fair dealing, and Wells Fargo is subject to this duty as well.

86.     Wells Fargo breached the contract by collecting post-payment interest payments from Miller and the other members of the Past Borrowers of Wells Fargo Class without first providing the FHA-approved form.

87.     Miller and the other members of the Past Borrowers of Wells Fargo Class were injured by Wells Fargo's breach and seek damages for Wells Fargo's unlawful collection of post-payment interest.   They seek damages for interest collected for the period beyond the date payment of the full unpaid principal was made.

## Count Two – Declaratory And Injunctive Relief

88.     Phillips asserts a claim for declaratory and injunctive relief against Wells Fargo, on behalf of herself and the Current Borrowers of Wells Fargo Class.

89.     Phillips seeks a declaration that the payoff statement Wells Fargo provided to Phillips on October 3, 2015 – which is the same form that Wells Fargo has used and continues to use for the entire class – is not an FHA-approved form and that, if Wells Fargo collects post-payment interest based on this payoff statement or any other unauthorized form, Wells Fargo will have breached the contract.

90.     Phillips also seeks an injunction prohibiting Wells Fargo from charging or collecting post-payment interest on loans insured by the FHA at any time during the period beginning on August 2, 1985 and ending on January 20, 2015 if Wells Fargo does not first provide borrowers the FHA-approved form.

91.     Phillips and each member of the Current Borrowers of Wells Fargo Class have a contract with Wells Fargo.  The terms of the contract are set forth in the promissory note.  The note is a form contract containing certain provisions that are identical to provisions found in the notes for every FHA-insured loan.

92.     In Section 2 of the note, "BORROWER'S PROMISE TO PAY; INTEREST,"

00375890 DOCX 2

Wells Fargo agreed that "[i]nterest will be charged on **unpaid** principal" and only "until the full amount of the principal has been paid."  Multistate – FHA Fixed Rate Note, USFHA.NTE, at 1 (emphasis altered).

93.     In section 5 of the note, "BORROWER'S RIGHT TO PREPAY," Wells Fargo agreed that it would charge "interest on the amount prepaid for the remainder of the month" only "to the extent . . . **permitted by regulations of the Secretary**."  *Id.* at 2 (emphasis altered).

94.     The relevant FHA regulation, titled "Handling Prepayments," provides that, "[e]**xcept as set out [in this regulation**], monthly interest on debt must be calculated on the actual unpaid principal balance of the loan." 24 C.F.R. § 203.558 (a) (2014) (emphasis added). "If the prepayment is offered on other than an installment due date [the first of the month], the [lender] . . . may require payment of interest to that date, but **only if** [the lender] so advises the [borrower], **in a form approved by the Commissioner**, in response to the [borrower's] inquiry, request for payoff figures, or tender of prepayment."  24 C.F.R. § 203.558 (c) (2014) (emphasis added).

95.     In addition to the express terms of the promissory note, the law implies a duty of good faith and fair dealing, and Wells Fargo is subject to this duty as well.

96.     Although Phillips and the other members of the Current Borrowers of Wells Fargo Class have not yet paid off their loans, they intend to do so before the maturity date.  And it is substantially likely and reasonable to expect that Wells Fargo will collect post-payment interest in the future without first providing the FHA-approved form, given that it has already demanded such payments by use of an unauthorized form and it has given every indication of making such demand again in the future.

97.     Thus, there is an actual controversy between Wells Fargo, on one side, and Phillips and the other members of the Current Borrowers of Wells Fargo Class, on the other side.

98.     A declaratory judgment would settle the controversy and clarify the contractual relationship, and the Court has the authority and should exercise its discretion to issue such declaratory judgment.  *See* 28 U.S.C. § 2201 (a); Fed. R. Civ. P. 57.

99.     The Court should issue a declaratory judgment that the payoff statement Wells Fargo provided to Phillips on October 3, 2015 – which is the same form that Wells Fargo has used and continues to use for the entire class – is not the FHA-approved form and that, if Wells Fargo collects post-payment interest based on this payoff statement or any other unauthorized

00375890 DOCX 2

18 of 19

forms, Wells Fargo will have breached the contract. *See id.*

100. The Court should also issue an injunction prohibiting Wells Fargo from charging or collecting post-payment interest on loans insured by the FHA at any time during the period beginning on August 2, 1985 and ending on January 20, 2015 if Wells Fargo does not first provide borrowers the FHA-approved form. *See* Fed. R. Civ. P. 65.

### Relief Requested

101. Plaintiffs ask this Court to:

    a.    certify this action as a class action, including certifying Plaintiffs as class representatives and undersigned counsel as class counsel;

    b.    grant judgment as a matter of law in favor of Plaintiffs and the class on any or all issues or, in the alternative, hold a jury trial to decide any disputed fact questions;

    c.    award Plaintiffs any damages they are entitled to, including but not limited to, compensatory damages, statutory damages and penalties, attorney fees, pre-judgment interest, post-judgment interest, and costs;

    d.    award requested declaratory and injunctive relief; and

    e.    order any other relief as the Court may deem proper and just.

Plaintiffs submit this complaint on March 31, 2016.

/s/ Brett M. Amron
Brett M. Amron
Fla. Bar No. 148342
BAST AMRON LLP
One Southeast Third Ave Ste 1400
Miami, FL 33131
305-379-7904
bamron@bastamron.com

Steven J. Rosenwasser
Ga. Bar No. 614908
Naveen Ramachandrappa
Ga. Bar No. 422036
BONDURANT, MIXSON &
ELMORE, LLP
1201 W Peachtree St NW
Ste 3900
Atlanta, GA  30309
404-881-4151
rosenwasser@bmelaw.com
ramachandrappa@bmelaw.com
*pro hac pending*

Adam Hoipkemier
Ga. Bar No. 745811
Matthew Wetherington
Ga. Bar No. 339639
THE WERNER LAW FIRM
2860 Piedmont Rd NE
Atlanta, GA 30305
404-564-4329
adam@wernerlaw.com
matt@wernerlaw.com
*pro hac pending*

**Attorneys for Plaintiffs**