## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:16-cv-21145-UU

ANNA MILLER,

      Plaintiff,

v.

WELLS FARGO BANK,
N.A.,

      Defendant.

_____/

## ORDER ON MOTION FOR CLASS CERTIFICATION

THIS CAUSE is before the Court upon Plaintiff's Motion for Class Certification, D.E. 165.

THE COURT has considered the Motion, the pertinent portions of the record and is otherwise fully advised in the premises. For reasons set forth below, Plaintiff's Motion is DENIED.

**I.**    **Background**

On March 31, 2016, Plaintiff, Anna Miller ("Plaintiff"), filed the instant putative class action, alleging claims for: (1) breach of contract (Count I); and (2) declaratory and injunctive relief (Count II). D.E. 1. Plaintiff alleges that Defendant, Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo"), wrongfully charged and collected from Plaintiff and the proposed class members "post-payment interest" (interest collected by a lender after the borrower has paid the full unpaid principal of the loan), without providing adequate disclosures under HUD and FHA regulations. Plaintiff alleges that under HUD and FHA regulations, all underlying FHA-insured loans must contain certain uniform provisions. *Id.* ¶¶ 1-7. Of particular relevance to this case, Plaintiff alleges that 24 C.F.R. § 203.558 required Wells Fargo to provide borrowers with "a

form approved by the [FHA]" before Wells Fargo was permitted to collect post-payment interest. *Id.* ¶¶ 4, 86. Plaintiff contends, both in her Complaint and the instant Motion, that Wells Fargo was required and failed to issue to borrowers a document containing **specific language** approved and authorized by the FHA before collecting post-payment interest, once Plaintiff and proposed class members either inquired about paying off their loan, requested payoff figures, or tendered to Wells Fargo the full unpaid principal of the loans. *Id.* ¶¶ 54-58. In other words, Wells Fargo should have sent to Plaintiff and other borrowers a form containing language "approved by the FHA" that pertained to post-payment interest in response to a borrower's inquiry, request for payoff figures, or tender of prepayment; Wells Fargo's failure to do so, followed by its collection of post-payment interest, renders it liable for breach of the promissory note.

In the instant Motion, Plaintiff moves to certify the following nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(3):

> Any person who had a FHA-insured loan for which (1) the Date of the Note is within a period beginning on June 1, 1996 and ending on January 20, 2015; (2) Wells Fargo, as of the date the total amount due on the loan was brought to zero, was the owner or otherwise held legal title to the Note; (3) Wells Fargo collected interest for any period after the total amount due on the loan was brought to zero (i.e., Wells Fargo collected "post-payment interest"); and (4) Wells Fargo collected post-payment interest during the applicable statute of limitations period, as shown by Exhibit E.

D.E. 165 p. 6. Plaintiff's proposed class includes approximately 1,059,518 borrowers that paid post-payment interest in the collective amount of $254,391,118.21**.** D.E. 165 p. 7, 165-1 p. 9.

In addition to her briefing, Plaintiff submits the following exhibits in support of her Motion: (1) the expert reports of two certified public accounts, Dr. Karen Fortune ("Dr. Fortune"), D.E. 165-1, and Dr. Karl A. Jarek ("Dr. Jarek"), D.E. 200-1; (2) the expert report of a computer science analyst, David Loshin ("Dr. Loshin"), D.E. 165-2; (3) excerpts of testimony from the depositions of Plaintiff, D.E. 200-2, and Jody Leo, Defendant's Rule 30(b)(6) witness

("Ms. Leo"), D.E. 165-3; (4) Plaintiff's declaration submitted in support of her Motion, D.E. 200-3; (5) Plaintiff's promissory note and payoff statement, D.E. 165-4, D.E. 165-9; (6) a chart containing the statute of limitations for breach of contract claims in each state, D.E. 165-5; (7) a chart documenting HUD's revisions to language regarding post-payment interest disclosures that were allegedly approved by the FHA, D.E. 165-7; (8) a 50-state survey of the elements for a breach of contract claim, D.E. 165-14; (9) a 50-state survey showing that a waiver defense requires proof of knowledge, D.E. 200-5; (10) an email chain from Defendant's employees concerning their allegedly inadequate post-payment disclosure form, D.E. 165-8; (11) Defendant's responses to Plaintiff's discovery requests, D.E. 165-6, 200-4; and (12) declarations from Plaintiff's counsel regarding their qualifications, D.E. 165-10 through D.E. 165-13.

Defendant opposes Plaintiff's Motion and submits the following exhibits in support: (1) Plaintiff's promissory note and payoff statement, D.E. 171-1, 171-3; (2) excerpts of testimony from the depositions of: (a) Plaintiff, (b) Ms. Leo, (c) Nicholas Fasois, Defendant's investor relationship manager, and (d) Jeremy Smith, a plaintiff in related Case No. 16-21146-UU, *Smith v. U.S. Bank, N.A.*, D.E. 171-2, 171-8, 171-9, 171-12; (3) correspondence between Defendant and Plaintiff's counsel concerning HUD's requirement to disclose whether borrowers would be required to pay post-payment interest, D.E. 171-4; (4) the expert report of former FHA Commissioner, Brian Montgomery ("Mr. Montgomery"), D.E. 171-5; (5) the expert report of a former director at HUD, Meg Burns ("Ms. Burns"), D.E. 171-6; (6) the expert report of a former deputy director at HUD, Karen Garner ("Ms. Garner'), D.E. 171-7[1]; (7) the Declaration of Ms. Leo in Support of Defendant's Opposition to Plaintiff's Motion for Class Certification, D.E. 171-

---

[1] In three *Daubert* motions, Plaintiff moves to exclude the expert reports, opinions and testimony of Mr. Montgomery, Ms. Burns and Ms. Garner from being considered on summary judgment or at trial. D.E. 183, 184, 185.

10; (8) the rebuttal expert report of Dr. Fortune, D.E. 171-11; (9) Plaintiff's responses to Defendant's discovery requests, D.E. 171-13, 171-14; and (10) Plaintiff's fee agreement between her and her counsel in this case, D.E. 171-15.

## II.   Discussion

### A.   Legal Standard

A class may only be certified if the court is satisfied, after rigorous analysis, that the prerequisites of Rule 23 have been satisfied. *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir. 1984). A plaintiff seeking class certification carries the burden of proof and must "affirmatively demonstrate" that all of the requirements of Rule 23 are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011); *Rustein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000).

As an initial matter, Rule 23(a) contains an implicit, threshold requirement that the proposed class be "adequately defined and clearly ascertainable." *See, e.g.*, *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 659 (M.D. Fla. 2001) (citing *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.")).[2] Rule 23(a) further contains four explicit prerequisites: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." These four prerequisites are commonly referred to as "numerosity, commonality, typicality, and adequacy of

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

representation." *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1188 (11th Cir. 2003).

In addition to the requirements of Rule 23(a), a plaintiff must also demonstrate that at least one of the three alternative requirements of Rule 23(b) has been met. *Pickett v. Iowa Beef Processors,* 209 F.3d 1276, 1279 (11th Cir. 2000).

Here, Plaintiff only argues for certification under Rule 23(b)(3) on grounds that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). D.E. 165, 200. In other words, "there must be common questions of law or fact among the class relating to . . . substantive claims . . . [that] predominate such that they have a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member. *Vega*, 564 F.3d at 1270 (internal citations and quotations omitted). "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004).

A district court has broad discretion in determining whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). "Although a court should not determine the merits of a case at the class certification stage, the court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug Co.*, 350 F.3d at 1188 n. 15; *see also Hudson v. Delta*

*Airlines,* 90 F.3d 451, 457 (11th Cir. 1996) (stating it is sometimes necessary to probe behind the pleadings before coming to rest on the certification question).

>   **B.   Analysis**

>>   i.   Whether the putative class is adequately defined and clearly ascertainable

Rule 23 includes an implied threshold requirement that the proposed class be "adequately defined and clearly ascertainable." *See, e.g.*, *Rink*, 203 F.R.D. at 659. "The Court must be able to look to objective criteria to accurately delineate membership in the class and identifying class members must be a manageable process that requires little individual inquiry." *Gregware v. Scotts Miracle-gro Co. & The Scotts Co., LLC*, No. 1:13-CV-24581-UU, 2014 WL 12531536, at *3 (S.D. Fla. Oct. 20, 2014).

As stated above, Plaintiff seeks to certify the following class:

> Any person who had a FHA-insured loan for which (1) the Date of the Note is within a period beginning on June 1, 1996 and ending on January 20, 2015; (2) Wells Fargo, as of the date the total amount due on the loan was brought to zero, was the owner or otherwise held legal title to the Note; (3) Wells Fargo collected interest for any period after the total amount due on the loan was brought to zero (i.e., Wells Fargo collected "post-payment interest"); and (4) Wells Fargo collected post-payment interest during the applicable statute of limitations period, as shown by Exhibit E.

D.E. 165 p. 6. Plaintiff's proposed class includes approximately 1,059,518 borrowers that paid post-payment interest aggregating $254,391,118.21. D.E. 165 p. 7, 165-1 p. 9. Defendant objects to the size of Plaintiff's proposed class and, moreover, argues the proposed class is not adequately defined or clearly ascertainable, for four reasons. First, Defendant argues that 24 C.F.R. § 203.558(b)(1) provides that "a form approved by the Commissioner" must only be provided **"in response to the mortgagor's inquiry, request for payoff figures**, or tender of prepayment," such that any borrowers who never requested a disclosure should not be included in the class. D.E. 171 p. 14 (emphasis added). Defendant represents that it and Plaintiff have no

data concerning whether 22,825 borrowers "ever requested a disclosure" and that, for this reason, these 22,825 borrowers do not belong in the proposed class. *Id.*

Second, Defendant argues that 35,486 borrowers included in Plaintiff's calculation of proposed class members failed to pay *any* interest when paying off their loan. Because these borrowers did not pay post-payment interest at all, Defendant argues that these borrowers should be excluded from the proposed class. *Id.*

Third, Defendant argues that Plaintiff "included Indiana borrowers beyond March 31, 2010, and Mississippi borrowers beyond March 21, 2013, both of which are beyond the applicable statute of limitations." *Id.* Plaintiff concedes that these 9,590 borrowers should be excluded from the proposed class. D.E. 200 p. 6.

Lastly, Defendant argues that the proposed class is not clearly ascertainable because "Plaintiff has defined her class in a way that it includes every borrower who has ever paid post-payment interest, regardless of circumstances." D.E. 171 p. 15. In other words, "Plaintiff's putative class does not exclude, as it must, borrowers who (1) reside in states that do not recognize Plaintiff's legal theory, (2) cannot show causation between Wells Fargo's disclosure and their harm, or (3) waived their claim against Wells Fargo because they knowingly and voluntarily paid post-payment interest." *Id.* Thus, according to Defendant, Plaintiff's proposed class is not clearly ascertainable because it includes individuals with no legally cognizable claim. *Id.*

Plaintiff responds to each of Defendant's arguments. First, Plaintiff argues that 24 C.F.R. § 203.558(b)(1) also requires that Defendant provide "a form approved by the Commissioner . . . in response to . . . **tender of prepayment**." D.E. 200 p. 4 (emphasis added). Because there is no

dispute that each of the proposed class members tendered prepayment by paying off their mortgages in full, Section 203.558 applies. *Id.*

Second, Plaintiff argues that the evidence shows that the 35,486 borrowers referenced by Defendant *did* pay post-payment interest by "making several monthly payments in advance" which, according to Defendant's Rule 30(b)(6) testimony, would have included post-payment interest. *Id.* p. 5. Plaintiff also argues that if the Court disagrees with her position, then it should still certify the class while excluding these 35,486 borrowers. *Id.* p. 6.

Lastly, Plaintiff argues that Defendant improperly conflates its arguments about predominance, which are properly considered under Rule 23(b)(3), with the inquiry of whether the proposed class is ascertainable, which hinges on whether members "can be ascertained by reference to objective criteria." *Id.*; *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787-88 (11th Cir. 2014) (internal citations omitted).

The Court finds that the proposed class is adequately defined. Based on evidence submitted to the Court and, in particular, the expert reports of Plaintiff's expert, Dr. Fortune, and Defendant's expert, Dr. Jarek, there is no doubt that the parties can readily determine: (1) which borrowers submitted an "inquiry, request for payoff figures, or tender of prepayment;" (2) whether Defendant provided any disclosures, including Defendant's allegedly inadequate form disclosure, in response to borrowers' inquiries, requests or tenders of prepayment; and (3) whether borrowers paid post-payment interest. D.E. 165-1, 171-11, 200-1. This is enough to satisfy the ascertainability requirement of Rule 23, especially since the Eleventh Circuit has made clear that "manageability concerns that a court might face *after* class members have already been identified—for example, concerns about whether particular class members are entitled to relief in light of individualized reliance, causation, and damages issues" is more

properly considered under Rule 23(b)(3). *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 950 (11th Cir. 2015); *Bussey*, 562 F. App'x at 787-88 (noting that an identifiable class exists if a court can, based on objective criteria, identify class members in a "manageable process that does not require much, if any, individual inquiry" (internal citations omitted)). In other words, when considering whether Plaintiff has satisfied the implicit, threshold requirements of ascertainability under Rule 23, the Court only considers whether "class members can be identified at all, at least in any administratively feasible (or manageable) way." *Id.* Because Plaintiff has shown that she can identify class members in a manageable way, the proposed class is adequately defined and clearly ascertainable. *See Karhu*, 621 F. App'x at 950; *see also Bussey*, 562 F. App'x at 787-88.

The Court will now address the explicit requirements of Rule 23(a) and Rule 23(b)(3). While the Court concludes that Plaintiff fails to meet her burden of proving that common legal and factual issues predominate over individual ones under Rule 23(b)(3), it will nonetheless analyze whether Plaintiff has met her burden under *both* Rule 23(a) and Rule 23(b)(3).

    ii.    <u>Rule 23(a)</u>

        a.    *Numerosity*

Under Rule 23(a), the Court first determines whether the proposed class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is "generally a low hurdle." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009). "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cost Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (internal quotations and citations omitted).

Defendant does not dispute that Plaintiff has met her burden of proving numerosity under Rule 23(a). The numerosity requirement under Rule 23(a) is easily satisfied here, as the proposed

class includes approximately 1,000,000 borrowers. D.E. 165 p. 7, 165-1 p. 9; *Cox*, 784 F.2d at 1553.

> b.     *Commonality*

While commonality and typicality are often conflated, "traditionally, commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Vega,* 564 F.3d at 1275 (quoting *Piazza v. Ebsco Indus., Inc.,* 273 F.3d 1341, 1346 (11th Cir. 2001)). "The commonality requirement demands only that there be 'questions of law or fact common to the class.'" *Id.* at 1268 (quoting Fed. R. Civ. P. 23(a)).

Commonality also poses a "low hurdle." *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1356 (11th Cir. 2009). Accordingly, the commonality inquiry is entirely distinct from the issue of predominance under Fed. R. Civ. P. 23(b)(3). *Id.* at 1268 (internal citation and quotations omitted). In contrast to the more in-depth consideration of predominance under Rule 23(b)(3), the commonality inquiry under Rule 23(a) requires that a court determine whether a plaintiff satisfies the "relatively light burden" that the class action will "involve issues that are susceptible to class-wide proof." *Id.* at 1268, 1270 (quoting *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir. 2001)); *see also Mohawk Indus., Inc.*, 568 F.3d at 1355 ("Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members."); *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) ("The predominance inquiry focuses on the legal or factual questions that qualify each class member's case as a genuine controversy, and is far more demanding than Rule 23(a)'s commonality requirement." (internal quotations and citations omitted)). The commonality requirement is generally met where allegations involve a common course of conduct by the defendant.

*Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-22330-CIV, 2014 WL 7366255, at *5 (S.D. Fla. Dec. 24, 2014).

Plaintiff argues that she has satisfied the commonality requirement under Rule 23(a) because Plaintiff and each class member, in proving their claims, intend to rely on the same: (1) uniform promissory note; (2) uniform language contained in these uniform notes; and (3) regulation governing Defendant's collection of post-payment interest (i.e., 24 C.F.R. § 203.558). D.E. 165 p. 8. Defendant does not dispute that Plaintiff has met her burden of showing commonality under Rule 23(a). *See* D.E. 171.

Plaintiff meets her low burden of proving commonality because Plaintiff's and proposed class members' allegations "involve a common course of conduct by the defendant"—namely whether Defendant breached the borrowers' promissory notes by providing an inadequate disclosure in violation of 24 C.F.R. § 203.558 before collecting post-payment interest. *Gregware*, 2014 WL 12531536, at *5 ("Even a single common question will satisfy the commonality requirement and as a result, not all questions of law and fact raised in this litigation need be common to the class."); *Physicians Healthsource, Inc.*, 2014 WL 7366255, at *5.

c.     *Typicality*

"A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). "The focus of typicality is whether the class representative's interest is aligned enough with the proposed class members to stand in their shoes for purposes of the litigation and bind them in a judgment on the merits." *Colomar v. Mercy Hosp., Inc.,* 242 F.R.D. 671, 677 (S.D. Fla. 2007). "In other words, there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the

class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.* Typicality "does not require identical claims or defenses." *Id.*

The Court concludes that Plaintiff satisfies the typicality requirement because Plaintiff, like each of the proposed class members, was allegedly provided with an inadequate disclosure form by Defendant and thereafter charged post-payment interest, which Plaintiff contends violated 24 C.F.R. § 203.558. *See, e.g.*, *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 696 (S.D. Fla. 2015) (finding typicality requirement satisfied where the defendant "purportedly sent the same fax and each class member's claim is based on the same legal theory and same set of facts as Plaintiff's claim").

d.    *Adequacy of Representation*

A court must also determine whether a class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987). Courts engage in a two-step inquiry. First, a court determines whether any substantial conflicts of interest exist between the class representative and putative class members. *Kirkpatrick*, 827 F.2d at 726; *Griffin v. Carlin*, 755 F.2d 1516, 1532 (11th Cir.1985). Next, a court determines whether "plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation." *Kirkpatrick*, 827 F.2d at 726.

The parties do not dispute that Plaintiff's counsel are qualified, but instead only contest whether there is a substantial conflict of interest between Plaintiff and putative class members. D.E. 165, 171, 200.

12

In particular, Defendant argues that Plaintiff is not an adequate representative because the fee agreement between Plaintiff and her counsel provides Plaintiff's counsel with "impermissible control over the settlement, which creates a conflict of interest." D.E. 171 p. 31. Defendant attaches the fee agreement as an exhibit to its Response and relies on the following fee agreement language:

> The parties acknowledge the possibility that the defendant may attempt to drive wedge between the Client and Counsel by proposing settlement terms that offer inducements to Client but may be: (a) disadvantageous to the common interest justifying multiple representation; (b) harmful to the Class; or (c) jeopardizing to Counsels interest in recovering appropriate compensation for services performed and expenses advanced. ***To induce Counsel to undertake representation in the face of these risks***, the Client agrees that, in the ***event that any Client chooses to settle his/her individual claim against the advice of Counsel***, the settling Client agrees to pay to Counsel ***the greater of*** the contingency fee described below or the value of services rendered calculated on an hourly basis using Counsel's normal and customary hourly rates.

D.E. 171 pp. 31-32 (citing D.E. 171-15) (emphasis in briefing). Based on this language, Defendant states that Plaintiff cannot settle her individual claims without her lawyers' explicit approval unless she pays her lawyers the greater of their lodestar or a 40% contingency fee, even though Plaintiff's damages are approximately $200.00 and Plaintiff's counsel's legal fees are likely "hundreds of thousands of dollars or more." *Id.* p. 32. Defendant argues that such a fee agreement creates a conflict of interest between Plaintiff and her counsel, whereby "Plaintiff's lawyers have effectively taken control over whether Plaintiff can ever settle this case individually." *Id.*

Moreover, Defendant argues that the fee agreement is especially problematic here, as Plaintiff testified that she did not understand how the fee agreement would work if she wanted to settle her individual claims. *Id.* Accordingly, Defendant argues that the fee agreement "creates an impermissible conflict between Plaintiff and her counsel." *Id.*

13

Plaintiff responds in four ways. First, Plaintiff argues that other courts have already rejected Defendant's adequacy argument and, therefore, urge this Court to do so. D.E. 200 p. 7 (citing cases). Second, Plaintiff argues that the fee agreement protects the class' interests, which is the "real purpose of the adequacy inquiry," by inhibiting Defendant's ability to "drive a wedge" between Plaintiff and her counsel. *Id.* In short, Plaintiff argues that the putative class' interests are best served by continuing to litigate the instant action—rather than permit Defendant to "pick off" the named Plaintiff. *Id.*

Third, Plaintiff argues that the fee agreement has not created and will not create any conflict between Plaintiff and her counsel because she is satisfied with her counsel's representation in this action. *Id.* In support thereof, Plaintiff attaches a declaration which, among other things, states that she does "not have any concerns about [her] counsel." D.E. 200-3 ¶¶ 1-2.

Lastly, Plaintiff and her counsel represent that they consent to expressly waiving the hourly fee provision in the agreement, should the Court request that Plaintiff and her counsel do so. D.E. 200 p. 7.

Plaintiff has satisfied the requirements of Rule 23(a)(4). As an initial matter, the Court sees no reason, at least at this stage, to rule on the reasonableness or ethical implications of Plaintiff's and her counsel's fee agreement. In ruling on class certification under Rule 23(a), the question is not whether Plaintiff and her counsel negotiated a fair or reasonable fee agreement, but is instead whether Plaintiff has "interests antagonistic to those of the rest of the class." *Kirkpatrick*, 827 F.2d at 726 ("The purpose of this requirement [of adequacy of class representation], as of many of Rule 23's procedural mandates, is to protect the legal rights of absent class members."); *Griffin*, 755 F.2d at 1533; *Grimes v. Fairfield Resorts, Inc.*, 331 F. App'x 630, 633 (11th Cir. 2007) (noting that "focus of the inquiry [under Rule 23(a)(4)] is on

14

whether some party members claim to have been *harmed* by the same conduct that *benefitted* other members of the class, and thus whether class members' interests are actually or potentially in conflict with the interests and objectives of other class members" (emphasis in original)). In other words, the question is whether Plaintiff and putative class members have "antagonistic or conflicting claims," such that Plaintiff cannot fairly and adequately representative putative class members. *See, e.g.*, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

Here, there is no indication that the fee agreement between Plaintiff and her counsel creates a conflict of interest whereby Plaintiff's interests are antagonistic to or in conflict with putative class members' interests. *See, e.g.*, *Shellman v. Countrywide Home Loans, Inc.*, No. 1:05-CV-234-TS, 2007 WL 1100795, at *3 (N.D. Ind. Apr. 12, 2007) (rejecting the defendant's argument that the class representative "has a financial conflict of interest with the proposed class because she has a retainer agreement with her counsel that would make her pay the costs of the lawsuit if she abandoned her claims"); *see also Hernandez v. Chase Bank USA, N.A.*, 243 F.R.D. 285, 289 (N.D. Ill. 2006) (finding that plaintiff satisfied Rule 23(a)(4) where he signed a fee agreement "providing that [the plaintiff] is only liable to his attorneys for fees and costs if he chooses to abandon the case"). Accordingly, Plaintiff is an adequate class representative under Fed. R. Civ. P. 23(a)(4).

iii.   Rule 23(b)(3)

Rule 23(b)(3) requires a plaintiff to establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to all other available methods for fairly and efficiently adjudicating the controversy."

a.    *Predominance*

1.    <u>Legal Standard</u>

"[P]redominance . . . is perhaps the central and overriding prerequisite for a Rule 23(b)(3) class." *Vega*, 564 F.3d at 1278. "[T]he issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Jackson*, 130 F.3d at 1005 (internal quotations and citation omitted). "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . monetary relief." *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (internal quotations and citations omitted). However, "common issues will not predominate over individual questions if, as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." *Id.* (internal quotations and citations omitted).

In practical terms, the Eleventh Circuit has described the test for predominance in the following way:

> Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3).
>
> . . .
>
> [I]f common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered.
>
> . . .

> Put simply, if the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence, that strongly suggests that individual issues (made relevant only through the inclusion of these new class members) are important. If, on the other hand, the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate.

*Vega*, 564 F.3d at 1270 (quoting *Klay*, 382 F.3d at 1255).

### 2.    Plaintiff's arguments

Plaintiff claims that common legal and factual issues in this case predominate over those subject to individualized proof. As an initial matter, Plaintiff argues that she and putative class members are all suing for breach of a uniform contract, which presents the "classic case for treatment as a class action" because the elements of a breach of contract claim do not vary greatly from state to state. D.E. 165 p. 14. In support thereof, Plaintiff submits a chart containing a 50-state survey of the elements of a breach of contract claim. D.E. 164-14.

Plaintiff also argues, without surveying the laws of each state, that states' laws concerning whether a breach of contract claim can be brought based on incorporated HUD regulations do not differ in any substantial way. To the extent that such laws do differ, Plaintiff argues that the Court can easily apply the same analysis it performed in its Order on Motion to Dismiss in *Dorado v. Bank of America, N.A.*, Case No. 16-CV-21147-UU, D.E. 61, in which the Court held that a breach of contract claim was viable under California law based on incorporated HUD regulations, to the laws of other states. D.E. 165 pp. 16-17.

In *Dorado*, the Court found an affirmative breach of contract claim for damages, based on incorporated HUD regulations, to be viable under California law after analyzing two California appellate court cases, *Pfeifer v. Countrywide Home Loans, Inc.*, 211 Cal. App. 4th 1250 (Cal. Ct. App. 2012) and *Fonteno v. Wells Fargo Bank, N.A.*, 228 Cal. App. 4th 1358, 1367

(Cal. Ct. App. 2014), and one California federal court decision, *Urenia v. Public Storage*, No. CV-13-01934-DDP-AJWX, 2013 WL 4536562, at *2 (C.D. Cal. Aug. 27, 2013). After analyzing these three cases, the Court determined that while California law did not permit a breach of contract claim based incorporated HUD regulations pertaining to foreclosures in non-judicial foreclosure cases, California law permitted an affirmative breach of contract claim for damages based on incorporated HUD regulations pertaining to borrowers' payment of post-payment interest. *Dorado*, Case No. 16-21147-UU (S.D. Fla. 2016), D.E. 61. Plaintiff construes this Order as "already reject[ing]" the argument that "state law differs with regard to HUD regulations" and whether these regulations may be incorporated into a breach of contract claim. D.E. 165 pp. 14, 16. In other words, Plaintiff argues that if the Court applies the same analysis from *Dorado* to breach of contract claims brought by Plaintiff and the putative class members in each of the remaining states, then it must, similarly, find a viable cause of action under each state's law based on a legal analysis common to all class members. *See* D.E. 165 pp. 16-17.

Alternatively, Plaintiff argues that the Court should adjudicate this class action by applying laws of numerous different states to each putative class member. *Id.* If this proves unmanageable, Plaintiff argues that the Court could then create subclasses that included only class members residing in states that recognize causes of action for incorporated HUD regulations. *Id.*

Second, Plaintiff argues that her and putative class members' breach of contract claims can be proven with common—rather than individualized—proof. In particular, Plaintiff argues that her and putative class members' breach of contract claims require proof of only the following three facts: (1) "that the uniform note required Wells Fargo to comply with HUD regulations before collecting post-payment interest;" (2) "that the uniform regulation required

Wells Fargo to provide Plaintiff with 'a form approved by the Commissioner;'" and (3) that "Wells Fargo's uniform payoff statement was not 'a form approved by the Commissioner.'" *Id.* pp. 17-19. Plaintiff, therefore, expressly rejects the position that Plaintiff and putative class members must "also show that, had she received a HUD-approved form, she would have moved her closing date and paid off her loan on the first of the month to avoid post-payment interest." p. 17. Instead, Plaintiff argues that her claim is that Defendant breached the uniform note by collecting post-payment interest when the contract (by incorporating HUD regulations) did not permit it to do so. *Id.* p. 18. Defendant is therefore, according to Plaintiff, liable as long as it collected post-payment interest without first complying with 24 C.F.R. § 203.558.

Lastly, Plaintiff argues that Defendant's affirmative defenses, including that Plaintiff and putative class members voluntarily and knowingly paid post-payment interest, do not raise individualized issues of law or fact because under the laws of all fifty states, a defendant must prove that a plaintiff had "full knowledge" of the circumstances under which the plaintiff waived his/her rights to prevail. *Id.* p. 19. According to Plaintiff, there is no evidence that Plaintiff or any class member could know, much less have full knowledge of, whether HUD had approved Defendant's form payoff statement, rendering Defendant's voluntary waiver defense meritless. *Id.* Moreover, Plaintiff argues that the voluntary waiver defense is a "common issue among class members" because the Court's resolution of this defense will require proof of "full knowledge" in the case of "every member of the class." *Id.* p. 20.

### 3.  Defendant's arguments

Defendant contends that Plaintiff fails to meet her burden of proving that common issues of law and fact predominate over issues subject only to individualized proof because: (1) various states' laws differ as to the viability of breach of contract claims based on incorporated HUD

regulations; (2) there are individualized issues concerning proof of causation, which Plaintiff and putative class members cannot prove with common evidence; and (3) Defendant's waiver defense requires individualized legal and factual determinations by the Court.

First, Defendant argues that the question is not whether the elements of a breach of contract claim are uniform under various states' laws, but is instead whether *this particular* breach of contract claim, which is based on incorporated HUD regulations, would be recognized in each of the fifty states included in Plaintiff's proposed class. D.E. 171 pp. 18-19. Defendant further argues that there is substantial inconsistency among states as to whether a plaintiff can bring a claim for breach of contract for violation of HUD regulations incorporated into a contract.

In support thereof, Defendant cites to numerous cases from different states refusing to recognize a breach of contract claim based on asserted breaches of HUD regulations. D.E. 171 pp. 16-18 (collecting cases). Defendant also cites to *Bates v. JP Morgan Chase, Bank, NA*, 768 F.3d 1126, 1131-32 (11th Cir. 2014), in which the Eleventh Circuit permitted a breach of contract claim under Georgia law "where the contract expressly condition[ed] non judicial foreclosure on compliance with HUD regulations" and, in doing so, noted that "[c]ourts are split on this question, with some courts refusing to recognize such claims, citing either to the fact that no private right of action exists to enforce the regulations or to other principles of contract law, such as the pre-existing duty rule." Based on this split of authority, Defendant argues that individualized legal issues predominate over common ones, as the Court would need to analyze *each* state's law to determine whether a class member from that state has a viable breach of contract claim.

Moreover, in light of this diverging authority, Defendant argues that it would be improper for the Court to apply, in blanket fashion, the analysis in *Dorado* to each class member's claim brought under different states' laws. Because Plaintiff failed to (and cannot) conduct an "extensive analysis" which would show that the law at issue is uniform in every state, Defendant argues that Plaintiff fails to satisfy Rule 23(b)(3).

Second, Defendant argues that there are individualized factual questions pertaining to causation that cannot be resolved with evidence common to the putative class. In particular, Defendant argues that Plaintiff must prove that she—as well as the remaining putative class members—would have and could have behaved differently if presented with a disclosure approved by HUD instead of Wells Fargo's allegedly inadequate disclosure. D.E. 171 p. 20. In other words, Defendant argues that to establish causation under Plaintiff's theory of liability, each individual borrower must show that the purported breach (i.e., alleged use of the wrong disclosure) proximately caused class members to suffer damages (i.e., pay post-payment interest).[3] *Id.* p. 21. This might require proof that: (1) each borrower received and failed to understand Wells Fargo's disclosure, but would have understood the form allegedly approved by the FHA; and/or (2) the allegedly inadequate disclosure impacted each borrower's decision on when to pay off their loan.

With respect to whether the allegedly inadequate disclosure impacted each borrower's decision concerning the date to pay off their mortgage, Defendant argues that borrowers choose closing dates for a variety of personal or professional reasons, including work schedules, school holidays or summer vacations, necessary house repairs or issues with a buyer's loan. Because the

---

[3]  Defendant, therefore, expressly rejects Plaintiff's argument that Defendant would have breached Plaintiff's and putative class members' promissory notes as long as: (1) the disclosure form violated 24 C.F.R. § 203.558 (i.e., was not "in a form approved by the Commissioner"); and (2) Defendant thereafter collected post-payment interest. D.E. 171 pp. 25-26.

Court would need to consider each of the individual circumstances surrounding each borrower's receipt of the allegedly inadequate disclosure and motivations for selecting a particular closing date, class certification would be inappropriate. D.E. 171 p. 20.

Lastly, Defendant argues that it pleaded and intends to raise the defense that Plaintiff waived her right to claim that Defendant breached Plaintiff's promissory note by collecting improper post-payment interest because Plaintiff was repeatedly "advised by Wells Fargo and HUD about post-payment interest—and how to avoid it" but, nonetheless, "still closed her loan on a day that required her to pay post-payment interest." D.E. 171 p. 28. As an initial matter, Defendant argues that the legal standard and burden of proof for implied waiver varies by state, with some states, such as Montana, Maryland and Delaware, requiring a heightened standard of proof and other states, such as Connecticut, requiring a lower standard or proof, with still other states, like North Carolina and Alaska, disfavoring a waiver defense altogether. *Id.* Moreover, Defendant argues that the waiver analysis would, just like causation, require the Court to review the individual circumstances of each borrower, including their loan file and testimony concerning their individualized knowledge of post-payment interest and Defendant's allegedly inadequate disclosure form. *Id.* Defendant relies primarily on *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1180-81 (11th Cir. 2010), in which the Eleventh Circuit reversed a district court's order granting class certification based in part on the Eleventh Circuit's finding that there were material differences between six states' laws concerning waiver, to support its argument that its waiver defense would require individualized factual findings that preclude certifying Plaintiff's proposed class. *Id.* pp. 29-30.

4.  <u>Analysis</u>

The Court agrees with Defendant. The predominance inquiry is "demanding" and "requires an examination of the claims, defenses, relevant facts, and applicable substantive law . . . to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant." *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (internal citations omitted). "In cases implicating the law of all fifty states, the party seeking certification . . . must provide an *extensive analysis* of state law variations to reveal whether these pose insuperable obstacles." *Sacred Heart Health Sys., Inc.*, 601 F.3d at 1180 (emphasis added) (citing *Cole v. Gen. Motors Corp.,* 484 F.3d 717, 724 (5th Cir. 2007)); *see also Klay,* 382 F.3d at 1262. It is "the court's duty to determine whether the plaintiffs have borne their burden where a class will involve multiple jurisdictions and variations in state law." *Sacred Heart Health Sys., Inc.*, 601 F.3d at 1180 (citing *Spence v. Glock, Ges.m.b.H.,* 227 F.3d 308, 313 (5th Cir. 2000). The most important consideration is the substantive law applicable to the case and the proof which will be necessary to establish the claim. *See, e.g.*, *Anderson v. Bank of the South, N.A.,* 118 F.R.D. 136, 150 (M.D. Fla. 1987) (citing *Simer v. Rios,* 661 F.2d 655, 672-73 (7th Cir. 1981) and *Goldwater v. Alston & Bird*, 116 F.R.D. 342, 355 (S.D. Ill. 1987)).

In this case, common questions of law and fact do not predominate over individual ones because, based on briefing and record evidence submitted by the parties, the Court concludes: (1) there are substantial differences between different states' laws concerning breach of contract claims based on incorporated HUD regulations; (2) Plaintiff and putative class members must prove that Defendant's alleged breached caused them damages, which would require individualized proof; and (3) Defendant's implied waiver defense implicates mixed issues of law and fact, which cannot be resolved by rulings or evidence common to the putative class.

23

In addition, for reasons set forth more fully below, the Court finds that Plaintiff has failed to identify, and the Court cannot fashion, subclasses which would alleviate Plaintiff's failure to satisfy the predominance requirement of Rule 23(b)(3). *See, e.g.*, *Pickett v. IBP, Inc.*, 182 F.R.D. 647, 653-54 (M.D. Ala. 1998) (denying class certification where the court was "at a loss for how to sub-class" to avoid "certification problems").

### 1. *Differences between states' laws*

First, as an initial matter, the Court must determine whether there are common questions of law with respect to the *particular claims* brought by Plaintiff. *See, e.g.*, *Anderson*, 118 F.R.D. at 150 ("The predominance determination involves an analysis of the substantive elements of plaintiffs' claims and the requisite proof on these issues and an inquiry into the form the trial on the issues would take."). Thus, the inquiry is not whether the elements of a breach of contract claim are uniform from state to state, but is instead whether states uniformly, or at least consistently, hold that borrowers can bring an affirmative breach of contract claim for damages based on violations of HUD regulations incorporated into promissory notes.

For this reason, the chart submitted by Plaintiff in support of her motion, D.E. 165-14, which includes only the generic elements of a breach of contract claim under the laws of each state, completely misses the mark. This is not a typical breach of contract case but is instead, as repeatedly noted by Plaintiff, a breach of contract case hinging on allegations that Defendant breached "uniform note[s]" that "incorporated . . . the same uniform [FHA] regulation." D.E. 165 pp. 7-8. Plaintiff's chart, which does not address different states' laws concerning the viability of a breach of contract claim based on incorporated FHA or HUD regulations, is woefully insufficient to satisfy her burden of providing "an *extensive analysis* of state law variations to reveal whether these pose insuperable obstacles" to certifying the proposed class. *Sacred Heart*

*Health Sys., Inc.*, 601 F.3d at 1180 (emphasis in original) (citing *Cole*, 484 F.3d at 724 and *Spence*, 227 F.3d at 313); *Klay*, 382 F.3d at 1262; *see also Bates v. JPMorgan Chase Bank, N.A.*, 768 F.3d at 1131 (noting that "[c]ourts are split on this question" of "whether a mortgagor has a cause of action under state law for breach of contract where the contract expressly conditions non judicial foreclosure on compliance with HUD regulations"); D.E. 171 pp. 16-20.

In fact, Defendant's briefing in response to Plaintiff's Motion makes clear that there is a wide divergence between different states' laws concerning the viability of a breach of contract claim based on incorporated FHA and HUD regulations. D.E. 171 pp. 17-19. Some circuit and district courts, interpreting state law, have recognized affirmative breach of contract claims for damages based on incorporated HUD regulations. D.E. 171 pp. 17-18 (citing *Hernandez v. Home Sav. Ass'n of Dallas Cty.*, 606 F.2d 596, 600-01 (5th Cir. 1979), *Donlon v. Evolve Bank & Trust*, No. CIV. JFM-12-2384, 2014 WL 1330522, at *5 (W.D. Tenn. Mar. 31, 2014) ("Still, although the HUD regulations do not themselves create a private right of action, a violation of the Handbook may sustain a breach of contract claim where a final agreement expressly incorporates the Handbook's various terms.") and *Baker v. Countrywide Home Loans, Inc.*, No. CIV A 308-CV-0916-B, 2009 WL 1810336, at *5 (N.D. Tex. June 24, 2009) ("Thus, failure to comply with the regulations made part of the parties' agreement may give rise to liability on a contract theory because the parties incorporated the terms into their contract.")). As rightly argued by Defendant, in contrast, other courts have only recognized an affirmative defense to non-judicial foreclosure claims based on HUD regulations incorporated into contracts. *Id.* (citing *Christenson v. Citimortgage, Inc.*, No. 12-CV-02600-CMA-KLM, 2013 WL 5291947, at *7 (D. Colo. Sept. 18, 2013) ("[T]he Court determines that Plaintiffs may use the failure of such condition as an affirmative defense but may not use it as the basis for an affirmative breach of contract claim").

And, as Defendant once again points out, still other courts have refused to recognize *any* cause of action or defense based on a theory of breach of contracted based on incorporated HUD regulations. *Id.* (citing *Wells Fargo Home Mortg., Inc. v. Neal*, 922 A.2d 538, 546 (Md. Ct. App. 2007) (concluding that a mortgagor may not "recover damages for breach of a certain provision of the deed in a private cause of action" based on violations of incorporated HUD regulations) and *Dixon v. Wells Fargo Bank, N.A.*, No. 12-10174, 2012 WL 4450502, at *8 (E.D. Mich. Sept. 25, 2012) (rejecting borrower's right to bring breach of contract claim in non-judicial foreclosure case based on incorporated HUD regulations)).[4]

In other words, there are at least three different divergences in authority among states, with federal courts interpreting state law holding that: (1) HUD regulations can be incorporated into a contract, so as to permit a party to bring an affirmative breach of contract claim; or (2) HUD regulations can be incorporated into a contract, but *only* so as to bring an affirmative defense to judicial foreclosure; or (3) HUD regulations can *never* be the basis for *either* a claim *or* affirmative defense based on a theory of breach of contract. D.E. 171 pp. 17-19 (collecting cases).

These variations in state law create a substantial obstacle to certifying Plaintiff's proposed class. If the Court were to certify Plaintiff's nationwide class, the Court would be

---

[4] In her Reply, Plaintiff argues that Maryland and Ohio are the only two states identified by Defendant "where a state appellate court has issued a binding opinion stating that a borrower cannot bring a contract claim for violation of HUD foreclosure regulations." D.E. 200 p. 11. Plaintiff misses the point. While Defendant has only identified state appellate court decisions from Maryland and Ohio directly holding that a borrower cannot bring a claim for violation of HUD regulations, the Court is nonetheless required to apply each state's law to each class member's claim—even in the absence of a binding appellate decision—and must do so based on "all available data . . . from all that is known about [the state supreme court's] methods of reaching decisions." *Bravo v. United States*, 577 F.3d 1324, 1326 (11th Cir. 2009). The Court may, therefore, look to the federal court decisions construing state law cited to by Defendant, as well as other sources, such as "treatises and law review commentary," to determine each state's relevant law. *Id.*

required to determine—on a case-by-case basis, with nuanced analysis and without any guidance from Plaintiff—whether *each state's law* permits an affirmative breach of contract claim based on incorporated HUD regulations. *Sacred Heart Health Sys., Inc.*, 601 F.3d at 1180. Because Plaintiff failed to provide *any* summary of authority concerning different states' laws as to whether a breach of contract claim based on incorporated HUD regulations is viable and, in any event, because Defendant has shown that there are obviously differences in state law that would need to be analyzed by the Court on a case-by-case basis in adjudicating putative class members' claims, Plaintiff fails to satisfy Rule 23(b)(3). D.E. 165; D.E. 200; *Sacred Heart Health Sys., Inc.*, 601 F.3d at 1180; *Babineau v. Federal Exp. Corp.*, 576 F.3d at 1191 (noting that common issues will not predominate over individual questions where an "overarching common issue breaks down into an unmanageable variety of individual legal . . . issues" (internal citation and quotations omitted)).

This is underscored by the fact that this Court conducted the sort of case-by-case analysis that it would have to apply to class members under the laws of *each* relevant state in *Dorado v. Bank of America, N.A.*, Case No. 16-CV-21147-UU, when it analyzed two California state appellate court decisions, *Pfeifer*, 211 Cal. App. 4th at 1250, *Fonteno*, 228 Cal. App. 4th at 1367, and one California federal court decision, *Urenia*, No. CV-13-01934-DDP-AJWX, 2013 WL 4536562, at *2, to determine that the named plaintiff had a viable breach of contract claim for damages under California law. Of course, because the Court's analysis in *Dorado* is limited to California law, the Court would need to carry out a similarly extensive analysis of the laws of each state to adjudicate each putative class member's claims. *Sacred Heart Health Sys., Inc.*, 601 F.3d at 1180. This would result in an unmanageable and tedious adjudication of borrowers' claims that would contravene the predominance requirement of Rule 23(b)(3). *See Brown v.*

27

*Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1235 (11th Cir. 2016) ("District courts should assess predominance with its overarching purpose in mind—namely, ensuring that a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." (citing *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)); *Hammett v. Am. Bankers Ins. Co.*, 203 F.R.D. 690, 701 (S.D. Fla. 2001) ("Considering adjudication of Plaintiff's breach of contract claim will require consideration of the laws of many states, Plaintiff has failed to establish predominance.").

For these reasons, common legal issues pertinent to resolving putative class members' claims do not predominate over individual ones under Rule 23(b)(3).

### 2. *Individualized factual determinations regarding causation*

Second, as shown by Eleventh Circuit precedent and excerpts from the deposition testimony of Plaintiff and Jeremy Smith, a plaintiff in related Case No. 16-21146-UU, filed in support of Defendant's Response, D.E. 171-2 and D.E. 171-12, there are individualized factual issues that preclude class certification under Rule 23(b)(3).

Plaintiff and putative class members cannot rely on common proof to prove that Defendant's alleged breach caused their injuries. To prove causation in this case, each class member would have to demonstrate that Defendant's allegedly inadequate disclosure caused the borrower harm (i.e., resulted in a borrower paying post-payment interest). *See, e.g.*, *Bates*, 768 F.3d at 1133 ("To reiterate, although we recognize that HUD regulations are enforceable terms of the contract, because Bates has failed to put forward any evidence of damages caused by the purported breach of these contract terms or seek any cognizable relief, we conclude that summary judgment properly was granted against Bates on her breach of contract claims.");

*Campbell v. Wells Fargo Bank, N.A.*, 2016 WL 6496458, at *11 (N.D. Ga. Oct. 6, 2016), *adopted by* 2016 WL 6462070 ("In conclusion, even if a breach of contract were shown in this instance based upon an alleged failure to strictly comply with the HUD regulations, Plaintiff Campbell has not met her burden of establishing that the alleged breach resulted in damages that would not have occurred but for the breach." (citing *Bates*, 765 F.3d at 1133 and *Hardy v. Wells Fargo Bank, N.A.*, No. 1:12-CV-851-SCJ-LTW, 2015 WL 11143148, at 6 (N.D. Ga. Jan. 23, 2015)); *Rourk v. Bank of Am. Nat. Ass'n*, No. 4:12-CV-42 CDL, 2013 WL 5595964, at *6 (M.D. Ga. Oct. 11, 2013), *aff'd*, 587 F. App'x 597 (11th Cir. 2014) (granting summary judgment in favor of defendant on breach of contract claim based on incorporated HUD regulations because "[e]ven if Defendant had not substantially complied with the requirement that it make a reasonable effort to arrange a face-to-face meeting with Plaintiff [as required by HUD regulations], it was Plaintiff's failure to tender a single payment for nearly two years that caused her default status and the foreclosure . . . [thereby showing that the plaintiff] has not established that such a failure caused her any damages"); *Baker*, No. CIV A 308-CV-0916-B, 2009 WL 1810336, at *5 (recognizing cause of action for breach of contract based on incorporated HUD regulations where a plaintiff could prove that "the defendant's breach caused plaintiff injury").

This would inject several individual issues into this class action. At a minimum, each class member would have to submit evidence showing that but for the inadequate disclosure, class members would have chosen to close on a different day of the month than they ultimate chose to close on so as to avoid, or lessen the amount of, each borrower's post-payment interest. *See* D.E. 165-4 (Plaintiff's 50-state survey showing causation as an element in a breach of contract claim in all fifty states). In other words, each class member would need to prove that it

was *the inadequate disclosure at issue in this action* which caused them to pay post-payment interest.[5]

This is especially problematic because, as shown by the deposition testimony of Plaintiff as well as the deposition testimony of Jeremy Smith, a plaintiff in related Case No. 16-21146-UU, borrowers might elect to pay off their mortgage on a date resulting in post-payment interest (1) for a variety of reasons completely unrelated to Defendant's allegedly inadequate disclosure, (2) with full knowledge of the requirement that they pay post-payment interest, or (3) after delegating the authority to choose a closing date to a third party, such as a title agency. D.E. 171-2 at 38:17-47:5, 47:7-48:9, 48:14-48:19; D.E. 171-12 at 49:9-14. As shown by just these two plaintiffs' depositions, the Court would have to hear individualized evidence as to whether Defendant's alleged breach of the promissory notes caused each of the approximately 1,000,000 borrowers to actually pay post-payment interest.

Accordingly, common issues of fact do not predominate. *Vega*, 564 F.3d at 1274 (reversing class certification where "[s]orting out and proving the claims . . . would require substantial individualized evidence different from and in addition to that which [the named plaintiff] would proffer to establish his own claim"); *see also O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 482 (S.D. Fla. 2006), *cause dismissed sub nom. O'Neill v. The Home Depot USA, Inc.*, No. 05-61931CIV, 2007 WL 1718931 (S.D. Fla. Jan. 29, 2007) (denying class certification where plaintiff brought claim under FDUTPA because individual issues of causation would "result in a series of mini-trials for each putative class member on the issue of causation").

---

[5] Nonetheless, at this stage, the Court refrains from ruling on what, exactly, Plaintiff must do to prove that Defendant's alleged breached cause her damages because such a ruling is more appropriately addressed on summary judgment or at trial. *See, e.g.*, *Hudson*, 90 F.3d at 457 (noting that "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met" (internal citation omitted)).

3.  *Defendant's implied waiver defense*

There are also individualized mixed questions of law and fact pertaining to Defendant's implied waiver defense which, once again, show that individual issues predominate over common ones. These issues are underscored by case law cited to in Defendant's briefing, D.E. 171 pp. 28-29, as well as the deposition testimony of Plaintiff and Jeremy Smith, a borrower in related case number 16-21146-UU, D.E. 171-2 at 38:17-47:5, 47:7-48:9, 48:14-48:19; D.E. 171-12 at 49:9-14.

In its Answer and Affirmative Defenses, Defendant raised the defense of implied waiver based on Plaintiff's and putative class members' alleged voluntary tender of post-payment interest with knowledge that they had the right to refrain from paying it. D.E. 67 ¶¶ 2, 8. As noted in Defendant's brief, the defense of implied waiver varies from state to state in a way that would likely impact Defendant's proof of its affirmative defense. D.E. 171 pp. 28-29; *Sacred Heart Health Sys., Inc.*, 601 F.3d at 1180–81 ("All six of the relevant states define waiver as the voluntary or intentional relinquishment of a known right. This uniformity, however, unravels beyond the definition."); *compare Roy v. Metro. Prop. & Cas. Ins. Co.*, 909 A.2d 980, 982 (Conn. Ct. App. 2006) ("Waiver may be inferred from the circumstances if it is reasonable to do so") *with Fairview Developers, Inc. v. Miller*, 652 S.E. 2d 365, 369 (N.C. Ct. App. 2007) ("Waiver by implication is not looked upon with favor by the court."); *compare Olsen v. Milner*, 276 P.3d 934, 939 (Mont. 2012) ("[T]he party asserting waiver must demonstrate . . . resulting prejudice") *with Parsons v. Halliburton Energy Servs., Inc.*, 785 S.E. 2d 844, 852 (W. Va. 2016) ("[C]onsiderations of prejudice and detrimental reliance are not essential to the assertion of waiver."). Accordingly, even though Plaintiff submits a chart showing that knowledge is an element of waiver in every state, D.E. 200-5, there are still substantial differences between the

31

elements and scope of the affirmative defense of waiver which, in this particular case, would require the Court to conduct individualized analyses of different states' laws.

Perhaps even more importantly, the affirmative defense of implied waiver would, as with the element of causation in Plaintiff's and putative class members' breach of contract claims, require the Court to review evidence of each class member's individual circumstances including, at the very least, whether: (1) each class member knew of their right to avoid paying post-payment interest in light of Defendant's allegedly inadequate disclosure; and (2) nonetheless chose to close on a date requiring payment of such interest for other reasons, including personal or professional ones. *See* D.E. 171-2 at 38:17-47:5, 47:7-48:9, 48:14-48:19; D.E. 171-12 at 49:9-14; *see also Sacred Heart Health Sys., Inc.*, 601 F.3d at 1180-81.

For these reasons, the Court finds that individual legal and factual issues predominate over common ones under Fed. R. Civ. P. 23(b)(3).

### 4.  *Creating subclasses*

The Court also finds that Plaintiff fails to meet her burden of showing that Rule 23(b)(3)'s predominance requirement would be satisfied by creating subclasses. This is true for three reasons.

First, as an initial matter, Plaintiff fails to provide *any* summary of different states' laws concerning the viability of an affirmative breach of contract claim for damages based on incorporated HUD regulations and, instead, merely rebuts Defendant's arguments concerning diverging states' laws in her Reply brief by focusing on the laws of two states, Maryland and Ohio, to argue that only these states refuse to recognize Plaintiff's and proposed class members' claims for breach of contract. D.E. 165; D.E. 165-14; D.E. 200. Under Rule 23(b)(3), Plaintiff is required to provide an "extensive analysis of state law variations" to show that these variations

do not pose insuperable obstacles or, alternatively, that these differences can be remedied by creating subclasses. *Sacred Heart Health Sys., Inc.*, 601 F.3d at 1180 (citing *Cole*, 484 F.3d at 724; *see also Klay,* 382 F.3d at 1262. But Plaintiff failed to analyze, in any way, whether Plaintiff's and proposed class members' claims are viable under the laws of each of the fifty states included in her proposed nationwide class. Thus, Plaintiff has failed provide the Court with any guidance concerning which subclasses could or should be created to satisfy Rule 23(b)(3)'s predominance requirement. The Court cannot certify subclasses under these circumstances. *See, e.g.*, *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1023 (11th Cir. 1996) (district court abused its discretion in certifying class where the court would be required to apply the laws of "all fifty states to assess the legality" of gambling programs, as "the court underestimated the management difficulties that would persist as these suits proceeded as class actions").

Second, Plaintiff's arguments concerning Maryland and Ohio law, and why the Court should create subclasses for borrowers from these states, have no merit. As shown by federal court cases construing state law cited in Defendant's Response to Plaintiff's Motion, there are at least five states (Michigan, Colorado, Maryland, Ohio, and Iowa) that do not permit a borrower to bring a breach of contract claim for violation of HUD regulations. D.E. 171 pp. 18-19 (collecting cases).

Even more importantly, the Court could not create viable subclasses simply by excluding borrowers from these five states, as other states included in Plaintiff's proposed nationwide class do not plainly either recognize or refuse to recognize breach of contract claims based on incorporated HUD regulations. Instead, as already discussed, there is at least a three-way split of authority, as some states hold that HUD regulations can form the basis of an affirmative breach of contract claim, while other states hold that HUD regulations can *only* be used as an

affirmative defense to judicial foreclosure, and *still* other states hold that HUD regulations can never be the basis for any claim or defense based on a theory of breach of contract. This divergence of authority would make it nearly impossible for the Court to determine which subclasses to create and, therefore, result in an "unmanageable [adjudication of a] variety of individual legal [issues]." *Babineau*, 576 F.3d at 1191; *Sacred Heart Health Sys., Inc.*, 601 F.3d at 1176.

Lastly, even if class members were separated into distinct subclasses based on the laws of each state, each borrower would still need to rely on substantial individualized proof to show that Defendant's alleged breach of the promissory note caused the borrower to pay post-payment interest. *Supra* pp. 27-29; *see* D.E. 171-2 at 38:17-47:5, 47:7-48:9, 48:14-48:19; D.E. 171-12 at 49:9-14. In other words, even "[u]nder any of the proposed subclasses, the remaining issues on each count would involve many highly individualized inquiries." *Rink*, 203 F.R.D. at 672. Under these circumstances, certification is not warranted under Rule 23(b)(3). *Id.*; *City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 643 (S.D. Fla. 2010) (denying certification because "[e]ven if a subclass was established . . . it would not prevent the individualized questions of whether causation or reliance or harm is present from overwhelming any commonalities within subclass").

### b.  *Superiority of a class action*

Because Plaintiff has failed to show that common issues predominate here, the Court need not address whether a class action mechanism is superior to other available methods for adjudicating this controversy. Nonetheless, the Eleventh Circuit has made clear that the superiority analysis is "intertwined with predominance analysis; when there are no predominant common issues of law or fact, class treatment would be either singularly inefficient . . . or

unjust." *Klay*, 382 F.3d at 1269 (quoting *Shelley v. AmSouth Bank*, No. 97-1170-RV-C, 2000 WL 1121778, at *8 (S.D. Ala. July 24, 2000)). Since common issues of law and fact do not predominate in this case, the Court also concludes that Plaintiff fails to meet her burden of establishing superiority. *Id.*; *Sacred Heart Health Sys., Inc.*, 601 F.3d at 1184 (noting that "the less common the issues, the less desirable a class action will be as a vehicle for resolving them"); *see also Keller v. Macon Cty. Greyhound Park, Inc.*, No. 3:07-CV-1098-WKW, 2011 WL 1085976, at *10 (M.D. Ala. Mar. 24, 2011) ("Furthermore, the predominance of factual and legal issues makes the class action the most desirable vehicle for adjudicating the claims Plaintiff Keller is asserting on behalf of the putative class."). Accordingly, it is

ORDERED AND ADJUDGED that Plaintiff's Motion, D.E. 165, is DENIED.

DONE AND ORDERED in Chambers, Miami, Florida, this __22d__ day of February, 2017.

URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided: counsel of record